**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**JASON BROWNING,**

        Plaintiff**,**

**v.**                                    Civil Action No. 5:18cv174
                                        Judge Bailey

**WVDOC, KAREN PSZCZOLKOWSKI,** Warden**;**
**JIM RUBENSTEIN,** Commissioner**;**
**MIKE HILL,** Chief of Security**;**
**WILLIAM YURCINA,** Deputy Warden**;**
**JOANIE HILL,** A.W.O**; BRANDY MILLER,** A.W.P.**;**
**RYAN ADAMS,** Unit Manager/Director of Classification;
**MIKE TAYLOR,** Chaplain**; C.J. RIDER,** Religious Services**;**
**DALE ELLIOTT,** Job Coordinator**;**
**DALE GRIFFITH,** Unit Manager**; KIM Wilson,**
Commissary Supervisor**; KELLY STRICKLAND,**
Kitchen Supervisor; **JENNIFER L. HAYES,**
Hearing Officer; **THOMAS McCARTHY,** SGT**;**
**TOBY MATTHEWS,** LT.**; HEATHER TIMMONS,**
Guard**; PAM MOORE,** LPN**; STACY KNIGHT,**
RN**; JAMES GRAY,** H.S.A. Director**;**
**BETSY JIVIDEN,** Commissioner**,**

        Defendants.

## REPORT AND RECOMMENDATION

On October 18, 2018, Jason Browning, the *pro se* plaintiff, initiated this civil action by filing a complaint pursuant to 42 U.S.C. § 1983. On July 18, 2019, the plaintiff was granted leave to proceed *in forma* pauperis. [Doc. 13], and by separate Order was granted leave to file an amended complaint. [Doc. 16]. On November 14, 2019, the plaintiff filed his amended complaint. [Doc. 26]. This matter is assigned to the Honorable

John Preston Bailey, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTUAL BACKGROUND

The plaintiff is a state inmate, who is currently incarcerated at the Northern Correctional Facility in Moundsville, West Virginia. The plaintiff, who is an Orthodox Jew, has had extensive disputes with the West Virginia Department of Corrections stemming from his religious beliefs.

The plaintiff first filed suit on February 11, 2013, in Civil Action No. 1:13-cv-23 ("Browning I").   In that complaint, the plaintiff alleged that various state correctional officials had violated his First Amendment right of free exercise of religion and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by: (1) denying him a kosher diet; (2) denying his religious apparel; and (3) denying him the right to worship weekly or on special holidays. On March 20, 2015, the Court entered an Order which granted in part and denied in part a Motion for Summary Judgment filed on behalf of the individuals named as the defendants. On February 6, 2016, after three rounds of mediation, a Settlement and Release of All Claims Agreement ("Settlement Agreement") was executed by the plaintiff and the West Virginia Division of Corrections ("WVDOC"). This Settlement Agreement fully resolved any and all claims asserted by the plaintiff, and accordingly, on February 12, 2016, the Honorable John Preston Bailey, United States District Judge, entered an order dismissing the case and retiring it from the active docket of the Court, subject to reopening on the motion of any party, and for good cause shown, within 90 days.

2

On June 30, 2016, the plaintiff filed two separate motions in Browning I. First, he filed a Motion to Vacate Agreement. Second, he filed a Motion for an Injunction to enforce the Settlement Agreement. On December 14, 2016, the then presiding Magistrate Judge entered a Report and Recommendation that recommended that the motions be denied without prejudice.  No objections were filed, and on January 17, 2017, the Court adopted the Report and Recommendations and denied both motions without prejudice.

On June 30, 2016, the same date that he filed the above noted motions in Browning I, he filed a second civil action which was assigned Civil Action Number 1:16-cv-145 ("Browning II). Although the complaint in Browning II was sparse at best, a review of the attachments suggested that the plaintiff again alleged various violations of his Constitutional rights and RLUIPA.  However, those claims appeared to be secondary to his main contention, that being that the WVDOC had breached the Settlement Agreement. On July 28, 2019, the case was dismissed without prejudice due to the plaintiff's failure to exhaust his administrative grievances.

**INSTANT COMPLAINT**

In the instant matter ("Browning III"), the plaintiff's amended complaint[1] names 20 defendants and loosely sets forth eight claims:

---

[1] The undersigned notes that the original complaint in Browning III and the amended complaint are nearly identical but for the addition of seven defendants.  Because it appears that the plaintiff primarily copied his original complaint, references to various appendixes actually refer to appendixes attached to his original complaint. Despite the fact, that the plaintiff was specifically notified in the Order granting him leave to amend, that only the defendants and claims presented in the amended complaint would be considered, and the original complaint would be superseded, the undersigned has

1. The WVDOC and all the defendants breached the "contact agreement[2],"

2. The [Agreement] was breached with respect to the provisions regarding commissary as set forth on pages 6-7 of the Agreement;

3. In violation of the Agreement, he is only allowed "to have" Passover, Rosh Hashanah[3], and Yom Kippur[4] with inmates that are not even Jewish and is prevented from having rabbis visit him without first complying with WVDOC Policy Number 153;[5]

4. He has been the victim of medical malpractice and deliberate indifference to his medical needs.  This claim appears to allege that he takes medication for

---

endeavored to review the amended complaint, where possible, by reviewing the appendixes attached to the original complaint.

[2] The plaintiff is referring to the Agreement reached in Browning I and signed on February 12, 2016.  The Agreement is attached to the amended complaint. See Doc. 26-7.

[3] Rosh Hashanah is the birthday of the universe, the day God created Adam and Eve, and it is celebrated as the head of the Jewish year.  See www.chabad.org. In 2021, it begins on Monday, September 6 at sunset and ends Wednesday, September 8 at nightfall.

[4] Yom Kippur means "Day of Atonement," and is the holiest day of the Jewish year. See www.chabad.org. In 2021, it began on Wednesday, September 15 at sunset and ends Thursday, September 16 at nightfall.

[5] Policy Number 153.00 states that:
> It is the policy of the West Virginia Division of Corrections (WVDOC) to maintain a mechanism that ensures the operation of a citizen involvement and volunteer program in compliance with appropriate American Correctional Association Standards for Adult Correctional Institutions. Furthermore, appropriate written policy and procedure shall specify who is responsible for operating a citizen's involvement and volunteer service program, and their lines of authority, responsibility, and accountability.

Included within this Policy are Religious Volunteers.

his thyroid disease and may be an attempt to allege that that soy products on the religious meal diet somehow negatively impact his thyroid condition.

5. The WVDOC and all the defendants are violating his rights by not providing him a kosher diet which meets his Jewish beliefs. It appears that the plaintiff is alleging that  the kitchen does not follow policy guidelines and keeps all kitchen equipment stored together and refuses to have a rabbi visit the kitchen.

6.  In this claim, the plaintiff's allegations are impossible to discern. He refers to false writeups, denials of religious requests, and failure to protect, but makes no clear statement as to any constitutional violation

7. It is unclear whether this is a continuation of claim six, or whether the plaintiff duplicated a numeral.  Regardless, the plaintiff alleges that he was denied "medical" for a few years until he finally ate soy[6], which nearly caused him to die.  He was then placed on a non-soy diet.

8. The plaintiff's final claim is that he was assaulted by another inmate, and he alleges defendant Adams, Hill and others allowed it to happen. He further alleges that he requested protective custody before the assault occurred.  He concludes this claim by noting that is "not [a] big concern now. I just wanted you to know how I was being done by these defendants."  [Doc. 26 at 17].

The plaintiff's amended complaint contains no indication what relief he is seeking, and in fact, the plaintiff did not include the final page of the Court-approved form.

---

[6] It is the undersigned's understanding that the main entry on the religious meal plan is soy based.

However, in  his initial  complaint in this proceeding, the plaintiff requested: (1) to have the WVDOC provide a kosher diet; (2) to have the WVDOC change their policy so he can observe Jewish holidays like an Orthodox Jew; (3) to be allowed to wear his religious material such as his kippah[7] and tzitzit[8] at all times; (4) to have his own time for "Orthodox Jews only" without non-Jews in the chapel on all Jewish holidays and not have to pay for anyone but himself; (5) to allow him the same rights as other prisons did and allow rabbis to come in all year round such as [Rosh Hashanah] and Yom Kippur; (6) to allow Aleph Institute[9] to send in matzas and grape juice every [shabbat][10] and tefillin[11] and other religious items for Jewish holidays; (7) to have the WVDOC allow him

---

[7]Also known as a yarmulke or skullcap, a kippah is a head covering for Jews. See www.myjewishlearning.com

[8] "In the Torah there is a commandment to wear 'fringes' on the corners of garments. That is, all garments of a certain six or larger, which have at least four corners, must have strings known as tzitzit attached. Since the normal clothing in our time does not have four corners, traditional Jews wears a garment that is specifically made to have four corners….This is known as the *tallit katan* or tzitzit and is usually worn under the shirt….During prayers the custom is to wear a large rectangular garment with tzitzit (*tallis gadol)* and pray while wrapped in it." See www.jewishvirtuallibrary.org

[9] According to its website, the Aleph Institute is a 501c3 certified non-profit Jewish organization dedicated to assisting and caring for the wellbeing of members of specific populations that are isolated from the regular community: U.S. military personnel, prisoners, and people institutionalized or at risk of incarceration due to mental illness or addictions.  See https://aleph-institute.org

[10] Every week, for the 25 hours beginning just before sundown on Friday until after night has fallen on Saturday night, Jewish people celebrate Shabbat, a period of rest and spiritual rejuvenation. See www.chabad.org

[11] Tefellin are a pair or black leather boxes containing Hebrew parchment scrolls. A set includes two—one for the head and one for the arm.  Each consists of the main components: the scrolls, the box, and the strap. The hand-tefillin are strapped onto the left arm (or the right arm, for a left handed individual), with the box resting on the bicep, facing the heart. The rest of the strap is then wound around the arm seven times, extending down to the long finger. The head-tefillin are placed on the head like a crown,

to have a microwave to stay kosher; (8) to allow him to order monthly food packages from any Jewish vendor; (9) to allow him to order a king size cooler to keep his food; (10) to allow him to order four bowls, two cups, and two water bottles; (11) to allow him to take religious classes and courses using the prison computer room that is internet even if he's watched; (12) to have the WVDOC give him his job back in the kitchen without being harassed to cook his food; (13) to have the WVDOC pay for the cost of this suit and "all relief this is the actual loss of what the agreement would have made if the contract had been performed."

## STANDARD OF REVIEW

### A. *Pro Se* Litigants

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

Courts must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, a complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

---

with the box resting just above the hairline in the center of the forehead, and the straps are tied in a knot at the nape of the neck. See www.chabad.org

> Section 1915(d) is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. .

490 U.S. at 327.

The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45 - 46.

The plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1, 92 S.Ct. 594, 596 (1972) (*per curiam*); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, *supra*, at 520–21. "[T]he mandated liberal construction afforded to *pro se* pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner

could prevail, it should do so.'" <u>Barnett v. Hargett</u>, 174 F.3d 1128, 1133 (10th Cir. 1999). However, "judges are [ ] not required to construct a party's legal arguments for him." <u>Small v. Endicott</u>, 998 F.2d 411, 417 - 18 (7th Cir.1993).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . " <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. at 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." <u>Id.</u> at 555, 570. In <u>Twombly</u>, the Supreme Court found that "because the plaintiffs [] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." <u>Id.</u> at 570. Thus, a plaintiff must  state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

## ANALYSIS

### I.      The WVDOC and OFFICIAL CAPACITY CLAIMS

The Supreme Court has held that:

> Title 42 U.S.C. § 1983 provides a cause of action against "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.

9

Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citing Carey v. Piphus, 435 U.S. 247, 254–257

(1978).  In Gomez v. Toledo, 446 U.S. 635 (1980), the Supreme Court succinctly stated

what a plaintiff must allege to sustain a civil rights action:

> By the plain terms of § 1983, two—and only two—allegations
> are required in order to state a cause of action under that
> statute. First, the plaintiff must allege that **some person** has
> deprived him of a federal right. Second, he must allege that
> the person who has deprived him of that right acted under
> color of state or territorial law.

Gomez, 446 U.S. at 640 (emphasis added).

It is well established in American jurisprudence that the State, as well as entities

that are the "arm" of the State, are not a "person" subject to suit pursuant to 42 U.S.C. §

1983.  Specifically, the Supreme Court of the United States has held:

> Obviously, state officials literally are persons. But a suit against a
> state official in his or her official capacity is not a suit against the
> official but rather is a suit against the State itself.  We see no reason
> to adopt a different rule in the present context, particularly when such
> a rule would allow a petitioner to circumvent congressional intent by
> a mere pleading device.
>
> We hold that neither a State nor its officials acting in their official
> capacities are "persons" under § 1983....

Will v. Michigan Dept. Of State Policy, 491 U.S. 58, 71 (1989) (Internal citations

omitted). Applying generally accepted factors[12] , there is no doubt that the WVDOCR is

an arm of the State.  See e.g., Berry v/ Rubenstein, No. 01:07-cv-535, 2008 U.S. Dist.

LEXIS 34782, at *6 (S.D.W. Va. April 25, 2008); see also Rakes v. Rush, 02-09-0118,

---

[12] Those factors are: (1) whether its powers are substantially created by the legislature;
(2) whether its governing board's composition is prescribed by the legislature; (3)
whether it operates on a statewide basis; (4) whether it is financially dependent on
public funds; and (5) whether it is required to deposit funds in the state treasury.

2009 U.S. Dist. LEXIS 67728, at *18 (S.D.W. Va. Aug. 4, 2009). Because the plaintiff has asserted claims pursuant to 42 U.S.C. § 1983, and no other counts, causes of action or legal theories are properly advanced against it, the WVDOCR is not a proper defendant and must be dismissed from this action.

In addition, all of the individual defendants named by the plaintiff are employees of the WVDOC.   Many of these defendants are entitled to Eleventh Amendment immunity.  According to the United States Supreme Court:

> The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity.

Kentucky v. Graham, 473 U.S. 159 (1985).

In this civil action, there is no waiver from the State of West Virginia allowing individuals to file suit against the DOC. Moreover, there is no congressional override allowing such a course of action. Therefore, the remaining questions are whether the plaintiff has filed suit against a state official, whether suit is filed against said official in his/her official capacity, and whether the plaintiff seeks damages.

Clearly there can be no dispute that all of the individual defendants are state officials. In Finley v. Trent, 955 F.Supp. 642 (N.D.W. Va. 1997), this Court was presented with a similar issue as is present in this case.  More specifically, in Finley, the plaintiff filed suit against several prison officials claiming those individuals violated her Eighth Amendment rights. 955 F.Supp, at 646. The Court determined that some of the claims were filed against the defendants in their official capacities.  After analyzing case law from the United States Supreme Court, the Court stated: "state officials acting in

their official capacities are entitled to immunity from liability under the Eleventh Amendment." Id. (citing Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989)). Accordingly, the Court concluded the defendants were entitled to dismissal of the complaint to the extend that it sought to impose liability against the defendants in their official capacities. Id. at 646-47.

The plaintiff's claims against A.W.O Joanie Hill, commissary supervisor Kim Wilson, Chaplin Mike Taylor, AWP Brandy Miller, Kim Strickland, and Religious Coordinator C.J. Ryder all relate to  "actions or inactions" taken by them relative to the Settlement Agreement and responding to the plaintiff's religious requests which are actions which could only be taken by them in an official capacity. Therefore, these six defendants are entitled to Eleventh Amendment immunity.

Accordingly, the only remaining question is whether the plaintiff is seeking damages in this matter. As previously noted, in his amended complaint, the plaintiff failed to attach the last page of the Court-approved complaint, and therefore, did not enumerate any request for relief.  However, in his original complaint, the plaintiff requests various items of monetary value, *i.e.*, microwave, four bowls, two cups, a king size cooler, and payment of the cost of this suit. Therefore, the last element necessary to entitle these defendants to Eleventh Amendment protection is fulfilled. Therefore, the plaintiff fails to state a claim upon which relief can be granted against these individual defendants, and they are due to be dismissed.

## 2.     WARDEN PSZCZOLKOKOWKI, COMMISIONER RUBENSTEIN, COMMISIONER JIVIDEN

In order to establish personal liability against a defendant in a 1983 action, the defendant must be personally involved in the alleged wrong(s); liability cannot be predicated solely under *respondeat superior*.  See Monell v. Department of Social Services, 436 U.S. 658 (1978); (Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). Aside from naming them in the style of the case, the plaintiff makes no mention of any of these defendants in his amended complaint. Instead, it appears he has simply named them in their position of authority with respect to the WVDOC and the NCF.

When a supervisor is not personally involved in the alleged wrongdoing, he or she may be liable under § 1983 if the subordinate acted pursuant to an official policy or custom for which he or she is responsible, Fisher v. Washington Metropolitan Area Transit Authority, 609 F.2d 1113 (4th Cir.1982); Orum v. Haines, 68 F.Supp.726 (SDW. Va. 1999), or the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or a tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 513 U.S. 813 (1994).

"Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Id. "A plaintiff may establish deliberate indifference by

demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

The plaintiff makes no allegations in his amended complaint which reveals the presence of the requirements for supervisory liability against Warden Pszczolkowksi, Commissioner Rubenstein[13], or Commissioner Jividen. Finally, to the extent that the plaintiff may have named them because of their duties with respect the grievance process, this is not the type of personal involvement contemplated by § 1983. See Paige v. Kuprec, 2003 W.L. 23274357 *1, (D.Md. March 31, 2003). Accordingly, these three defendants are due to be dismissed as well.

### 3. BREACH OF SETTLEMENT AGREEMENT

In Claim One, the plaintiff baldly alleges that all the defendants breached the Agreement. In Claim Two, the plaintiff alleges that all defendants have breached the commissary part of the Agreement. In Claim Three, the plaintiff alleges that the defendants have breached the Agreement with respect to celebrating Passover, Rosh Hashanah, and Yom Kippur.

Courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party and must dismiss claims when such jurisdiction is lacking. Ruhrgas AG v. Marathon Oil Co, 526 U.S. 574, 583 (1999); see also Arbaugh v. Y & H Hosp., 546 U.S. 500, 514 (amount in

---

[13] The undersigned notes that Jim Rubenstein retired from his position as the Commissioner of the West Virginia Division of Corrections on April 1, 2017. Therefore, although he signed a policy directive referenced by the plaintiff, it is highly unlikely that he was still the Commissioner when the issued raised in the amended complaint occurred.

controversy threshold is necessary ingredient in subject matter jurisdiction); <u>CE Design Ltd. v. American Economy Ins. Co.</u>, 775 F.3d 39, 43 (1st Cir. 2014).

A breach of contract claim is grounded in state law. Accordingly, because the plaintiff's Claims One through Three do not involve a federal question, in order to establish jurisdiction, the plaintiff must demonstrate that there is diversity of citizenship, as required by 28 U.S.C. § 1332, which states in pertinent part:

> (a) The district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between
>
> --(1) citizens of different states….

28 U.S.C, § 1332(a)(1). The burden of establishing federal jurisdiction lies on the party seeking to litigate in federal court. <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178, 179 (1936); <u>Mulcahey v. Columbia Organic Chems. Co.</u>, 29 F.3d 148, 151 (4th Cir. 1994), When a case is filed in federal court, jurisdiction is proper where the parties are diverse "unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount." <u>Landmark Corp. v. Apogee Coal Co.</u>, 945 F. Supp. 932, 935 (S.D. W.Va.1966) (Copenhaver, J.) <u>citing</u> <u>St. Paul Mercury Indem. Co. v. Red Can Co.</u>, 303 U.S. 633, 635 (S.D. W.Va. 2009) (Johnson, J.).

In the instant case, the plaintiff is incarcerated at the Northern Correctional Facility, was convicted in the Circuit Court of Mingo County, and may be considered a citizen of the State of West Virginia. There is no indication that any of the defendants are not citizens of West Virginia but given the close proximity of the NCF to the State of Ohio, the undersigned considers it possible that one or more of the defendants may not

be citizens of the State of West Virginia. Therefore, the undersigned has reviewed this matter giving the plaintiff the benefit of the doubt and concluding that he meets the diversity of citizenship prong of section 1332.

However, the plaintiff's complaint does not meet the $75,000 threshold in order to satisfy the amount in controversy prong of section 1332. The amount in controversy for jurisdictional purposes is determined by the amount of damages or the value of the property that is the subject of the action. See Hunt v. Washington State Apple Advertising Comm'n, 432 US 333, 347-48 (1977).

As previously noted, the plaintiff did not include any claim for relief in his amended complaint. However, even relying on his claim for relief in his original complaint does not help the plaintiff. Much of the relief that he requests is in the form of injunctive relief, which has no monetary value. To the extent that he requests that he be allowed to have a microwave, a king size cooler, four bowls, two cups, two water bottles, and a candelabra, even if the plaintiff is requesting that the DOC provide those items, their value is woefully less than $75,000. Therefore, it appears to a legal certainty that the plaintiff's claims are really for an amount less than the jurisdictional amount, and this Court lacks subject matter jurisdiction over the plaintiff's breach of contract claim.[14]

### 4. PRECLUSION DOCTRINES

The doctrines of *res judicata* and collateral estoppel serve "the dual purpose of protecting the litigants from the burden of relitigating an identical issue with the same

---

[14] However, the plaintiff may not be barred from pursuing such relief in the appropriate state court.

party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hoisery Co. v. Shore, 439 U.S. 322, 326 (1979) (citing Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Foundation, 402 U.S. 313, 328-29 (1971)). *Res judicata* has been described as a "rule of fundamental and substantial justice," Peugeot Motors of Am., Inc., v. E. Auto Distributors, I*nc.,* 892 F.2d 355, 359 *(*4th Cir. 1989), whereby "a final judgment on the merits bars further claims by parties or their privies on the same causes of action." Young-Henderson v. Spartanburg Area Mental Health Cir., 945 F.2d 770, 773 (4th Cir. 1991) (quoting Montana v. United States, 440 U.S. 147, 153 (1979)). *Res judicata* bars litigation of all claims or defenses that were available to the parties in the previous litigation, regardless of whether they were asserted or determined in the prior proceeding.  See Brown v. Felson, 442 U.S. 127, 131 (1979) ("Res judicata thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes*"),* and Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991) ("The preclusive effect of a prior judgment extends beyond claims or defenses actually presented in previous litigation, for "[n]ot only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'"). Collateral estoppel, on the other hand, works to preclude "relitigation of issues actually litigated and necessary to the outcomes of the first action." Parklane Hosiery, 439 U.S. at 356 n. 5.

17

As a threshold matter, the undersigned explains his decision to consider *res judicata* and collateral estoppel defenses *sua sponte*. Collateral estoppel and *res judicata* are affirmative defenses that typically must be raised by an opposing party. Fed. R. Civ. P. 12. Nevertheless, a court may *sua sponte* raise issues of preclusion in "special circumstances," even though the defense has not been raised. Arizona v. California, 530 U.S. 392, 412 (2000) (quoting United States v. Sioux Nation, 448 U.S. 371, 332 (190) (Rehnquist, J., dissenting) (internal quotation marks omitted)). "This result is fully consistent with the policies underlying *res judicata;* it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste.: id.; see also Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655 (4th Cir. 2006) (determining *res judicata* may be raised and considered *sua sponte* because it implicates important institutional interests of the judiciary); Doe v. Pfrommer, 148 F.3d 73, 80 (2d Cir. 1998) (finding that district court did not err by raising the issue of collateral estoppel on its own because of the "strong public policy in economizing the use of judicial resources of avoiding relitigation").

Such "special circumstances" exist where "a court is on notice that it has previously decided the issue presented." Arizona, 530 U.S. at 412; see also Saudi v. Ship Switz, S.A., 93 F. App'x 516, 520-21 (4th Cir. 2004) ("[G]iven the indisputable privity of the parties and the identity of the issues between the instant case and the case upon which the *res judicata* holding rested, we believe that *sua sponte* invocation of the bar was permissible."). Similarly, the court may invoke *res judicata* on its own where "all relevant data and legal records are before the court and the demands of comity, continuity in the law, and essential justice mandate judicial invocation of the principles of

18

*res judicata*." Carbonell v. La. Dep't of Health and Human Res., 772 F.2d 185, 189 (5th Cir. 1985). Here the litigation of the plaintiff's 2013 complaint, which stretched over three years, was litigated in the same court between mostly identical parties.  Given the substantial overlap between the cases, the undersigned finds that the interests of justice and concerns for judicial efficiency support *sua sponte* consideration of *res judicata*  and collateral estoppel.

### A. *Res Judicata*

"The application of res judicata turns on the existence of three factors" '(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suits; and (3) an identity of parties or their privies in the two suits.'" Clodfelter v. Rep. of Sudan, 720 F.3d 199, 210 (4th Cir. 2013) (quoting Pueschel v. United States, 369 F.3d 345, 354-55 (4th Cir. 2004)).   The factors are given broad application with an aim to "eliminate vexation and expense to the parties, wasted judicial machinery and the possibility of inconsistent results."   Thomas v. Consolidation Coal Co., 380 F.2d 69, 77 (4th Cir. 1967).  To that end, the Fourth Circuit has made clear that "[t]he preclusive affect of a prior judgment extends beyond claims or defenses actually presented in previous litigation." Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991).  "Not only does res judicata bar claims that were raised and fully litigated, it 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties. Regardless of whether they were asserted or determined in the prior proceeding.'" Peugeot Motors of Am., Inc. v. E. Auto Distributors Inc., 892 F.2d 355, 359 (4th Cir. 1989) (quoting Brown v. Felsen, 442 U.S. 127, 131 (4th Cir. 1979)).  "By precluding parties in a subsequent proceeding from raising claims that

were or could have been raised in a prior proceeding 'res judicata…encourages reliance of judicial decisions, bars vexatious litigation, and frees the court to resolve other disputes.'" Pueschel, 369 F.3d at 354 (quoting Brown, 442 U.S. at 131)).  Here, there is no question  that Browning I culminated in a final decision on the merits and that there is identity of the parties. The principal issue is whether the identity of the causes of action requirement is satisfied.

"There is no simple test to determine what constitutes the same cause of action of res judicata purposes," Aliff v. Joy Manufacturing Co., 914 F.2d 39, 43 (4th Cir. 1990).  Courts look primarily to whether the claims arise from the same factual basis. See id. This broad "transactional approach" requires the Court to decide whether the plaintiff's claims "arise out of the same transaction or series of transactions or the same core of operative facts" at issue in the 2013 case. Pueschel, 369 F.3d at 355 (quoting In re Varat Enters., Inc., 81 F.3d 1310, 1316 (4th Cir. 1996) (internal quotations omitted)); see also Meekins, 946 F.2d at 1058 (describing the transactional approach). The court must "presume that a litigant has 'done his legal and factual homework,' and raised all grounds arising out of the same factual context to support his claims." Peugeot Motors, 892 F.2d at 359 (citing Car Carriers, Inc. v. Ford Motor Co., 789 F.2d 589, 596 (7th Cir. 1986)).

Addressing these elements in turn, a final adjudication of a case virtually identical to the present action occurred in Browning I.  An Order dismissing the case was entered by Judge Bailey on February 12, 2016, which dismissed Browning I with prejudice.[15]  In

---

[15] Although Browning I was originally assigned to Irene Keeley, United States District Judge and referred to David Joel, U.S. Magistrate Judge, the case was subsequently

addition, Browning I involved many of the parties named in the present case.  More specifically, there is no question that Jason Browning was the plaintiff in both cases. Furthermore, there is no question that James Rubenstein, Brandy Miller, Mike Taylor, and CJ Ryder was defendants in the prior case and are now defendants in the present case. The undersigned acknowledges that in the instant case, the plaintiff has named a litany of defendants who were not named in Browning I. However, according to the Fourth Circuit Court of Appeals

> There is no single fixed definition of privity for purposes of *res judicata*.  Whether privity exists is determined on a case by case examination of the relationship and interests of the parties.  The touchstone of privity for purposes of *res judicata* is that a party's interest is so identical with another that representation by one party is representation of the other's legal rights.

Weinberger v. Tucker, 410 F.3d 486, 491-92 )4th Cir. 2007).

Browning I and the present matter both involve employees of the DOC who have, in one way or another, interacted with the plaintiff.  In addition, both involve nearly identical issues regarding the plaintiff's dissatisfaction with the accommodation of his religious beliefs at the NCF.  In fact, of the thirteen specific requests for relief set forth in Appendix 7 of the original complaint in this matter [Doc. 1-7], most  were contained and or/addressed in Browning I's complaint and the Settlement Agreement.

**B. Collateral Estoppel**

Collateral estoppel, or "issue preclusion," is related to the doctrine of *res judicata*. Collateral estoppel "forecloses the relitigation of issues of fact or law that are identical to issues which has been actually determined and necessarily decided in prior litigation in

---

reassigned to John Preston Bailey, United States District Judge and referred to James Seibert, U.S. Magistrate Judge.

which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate." In re Microsoft Corp. Antitrust Litigation, 355 F.3d 322, 326 (4th Cir. 2004) (quoting Sedlack v. Braswell Servs. Group, Inc., 134 F.3d 219, 224 (4th Cir. 1998) (internal quotation marks omitted)).  Application of collateral estoppel turns on five factors:

> (1) The issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact act in the prior proceeding.

In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 326 (4th Cir. 2004).

Applying the preclusion doctrines to this case, makes clear that the plaintiff's complaint should be dismissed.  The issue of a kosher diet, celebration of Jewish holidays, religious apparel, chapel time, religious items such as grape juice and tefillin, purchase of kosher foods from vendors, a microwave, a king size cooler, battery operated candles, electric candelabras, and employment within the prison were all specifically addressed during the mediations and resolved in the settlement agreement. To the extent that the plaintiff now raises for the first time, the right to have rabbis come in all year round,  the right to order four bowls, two cups, and two water bottles, and the ability to take religious classes and courses using the prison computer room "that is internet," it is clear that these are claims for recovery that were previously available to the plaintiff but not pursued.[16]

---

[16] Furthermore, to the extent that the Court would view these as issues not foreclosed by the preclusion doctrines, a review of the voluminous grievances filed by the plaintiff

The undersigned stresses that in Browning I, the plaintiff's motion to appoint counsel was granted on April 30, 2015, and Irvin N. Shappell and Timothy Cogan, agreed to act as counsel.  Not only are they both experienced litigators,  Mr. Shappell is intimately familiar with Orthodox Judaism and its particular observances and rituals. Again, the plaintiff's issues regarding accommodation of his orthodox Jewish religion were extensively mediated over three separate sessions, and the plaintiff and his lawyers were present in person during each session.  In short, it is abundantly clear that the plaintiff is attempting to "refine" the terms of the settlement agreement to add provisions that could have been addressed in Browning III.

**CONCLUSION**

For the reasons stated herein, it is hereby **RECOMMENDED** that the plaintiff's complaint be **DISMISSED WITH PREJUDICE.**

The plaintiff shall have fourteen days from the date of entry of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  A copy of such objections should also be submitted to the United States District  Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave  to exceed the page  limitations, consistent with LR PL P 12.

---

and attached to his original complaint and amended complaint, clearly indicates that he has never raised those issues in the grievance process as required before proceeding with a complaint in this Court.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known   address as shown on the docket. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

 DATED: February 7, 2022


*/s, James P. Mazzone*
  JAMES P. MAZZONE
   UNITED STATES MAGISTRATE JUDGE

24